IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

      Plaintiff,

      v.

GRACEWORKS LUTHERAN
SERVICES,

      Defendant.

:      Case No. 3:15-cv-261

:      JUDGE WALTER H. RICE

     MAGISTRATE JUDGE MICHAEL R. MERZ

:

---

DECISION AND ENTRY OVERRULING DEFENDANT GRACEWORKS
LUTHERAN SERVICES'S MOTION FOR SUMMARY JUDGMENT (DOC.
#12); PLAINTIFF EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION'S CLAIM AGAINST DEFENDANT UNDER THE
AMERICANS WITH DISABILITIES ACT OF 1990 SHALL PROCEED TO
TRIAL; STAY OF PROCEEDINGS (DOC. #19) VACATED

---

Plaintiff Equal Employment Opportunity Commission ("EEOC") claimed that

Defendant Graceworks Lutheran Services ("Defendant") violated Title I of the

Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12111-17, by its refusal to

hire charging party Michelle Anthony ("Anthony"), allegedly due to her inability to hear

and speak. Doc. #1. Defendant has moved for summary judgment, arguing that

Anthony never suffered an adverse employment action and, thus, the EEOC cannot

meet its *prima facie* burden on its ADA discrimination claim, the EEOC's sole cause of

action. Doc. #12. For the reasons set forth below, Defendant's motion is

OVERRULED.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In late 2013, Defendant posted on its website a job opening to be the Site Manager at its St. Mark Apartment Complex ("St. Mark"), an assisted living community "for deaf/hard-of-hearing persons or with other physical disabilities."  Doc. #16-5, PAGEID #137.  The job description stated that a "[s]uccessful candidate must be a hearing individual fluent in ASL (American Sign Language)."  *Id*. (parentheses in original).  Anthony, who "previously worked as a case manager for [] St. Mark," Doc. #16-2, ¶ 3, PAGEID #132, "applied online for the . . . position on or about December 12, 2013."  *Id*., ¶ 4.  It is undisputed that, at all relevant times, Anthony was "certified and fluent in . . . ASL," *id*., ¶ 2, but could not hear or speak, having been born deaf.  *Id*., ¶ 1.

On January 26, 2014, Keith GunderKline ("GunderKline"), Regional Property Manager for Graceworks, emailed Anthony, asking her if she was interested in interviewing for the Site Manager position on February 7, 2014.  Doc. #16-3, PAGEID# 135.  Anthony responded on January 27, 2014, confirming her interest and asking GunderKline to "make sure to get an ASL interpreter for me."  *Id*.  GunderKline replied to Anthony's email on January 28, 2014, stating that the position required:

> [C]andidates [to] be fluent in ASL AND able to speak and hear.  If you require an interpreter to participate in the interview then it sounds like you really wouldn't qualify for this position. . . .  I'm not in the office today but can be available by cell phone if you feel a need to discuss at all.

*Id*., PAGEID #136 (emphasis in original).  Anthony did not contact GunderKline or pursue the Site Manager position further.  Doc. #11-1, PAGEID #70.

On February 10, 2014, Anthony filed a charge of disability discrimination with the EEOC, alleging that, because St. Mark was a "deaf ap[artment]" and that she would have access to "computers [and a] video phone," Anthony's status as a deaf individual

2

would not prevent her from performing any of the position's essential functions.  Doc. #11-1, PAGEID #78.  The EEOC filed the instant lawsuit on July 31, 2015.  Doc. #1.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.265 (1986).  The moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  Rule 56 "requires the nonmoving party to go beyond the pleadings," and present some type of evidentiary

material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

"Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure Civil 3d*, 2726 (1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). If it so chooses, however, the court may also consider other properly presented materials in the record. Fed. R. Civ. P. 56(c)(3).

## III.  ANALYSIS

Defendant's motion for summary judgment is based solely on the EEOC's alleged inability to make a *prima facie* case of disability discrimination.

> To prevail in a disability discrimination case, a plaintiff must show: (1) she was "disabled" under the ADA; (2) she was otherwise qualified to perform

4

the essential functions of the job, with or without reasonable accommodations; (3) she suffered an adverse employment action; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) a nondisabled person replaced her.

*Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 553 (6th Cir. 2008).  The only element in dispute for the purpose of the present motion is whether Anthony suffered an adverse employment action, which is "'a significant change in <u>employment status</u>, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Keeton v. Flying J, Inc.*, 429 F.3d 259, 267 (6th Cir. 2005) (emphasis in original) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)).

The EEOC claims that Defendant undertook two actions that evinced a "consistently discriminatory policy" against hiring deaf individuals.  Doc. #16, PAGEID #113.  In the face of such "certain and expressed discriminatory rejection," the EEOC argues, Anthony was not required to "subject [herself] to humiliation . . . [of making the] 'futile gesture' of applying or even completing the application process." *Id*.  The first action was the job description created by Defendant, which included a requirement that the applicant be able to hear.  The EEOC claims that the supposedly discriminatory job posting was Defendant "reject[ing] Anthony before she even applied," as the "advertisement humiliated Anthony and subjected her to explicit and certain rejection." Thus, the EEOC argues, "[s]he was not required to apply to prove her failure to hire claim." *Id*., PAGEID #120.  The second alleged adverse action occurred when GunderKline, in his January 28, 2014, email, informed her Anthony that, because she is unable to hear and speak, she "really wouldn't qualify for the position."  Doc. #16-4,

5

PAGEID #136. The EEOC argues that GunderKline's email was tantamount to a refusal to hire, and faced with certain rejection, Anthony was under no obligation to continue the futile interview and application process. Doc. #16, PAGEID #120.

Defendant counters that there is no evidence that Anthony concluded from the job description or GunderKline's email that she would be subject to certain rejection if she requested an interview and completed the application process. Doc. #18, PAGEID #188-89. Thus, Defendant claims, Anthony's decision to abandon the application process voluntarily means that she did not suffer an adverse employment action, and, consequently, the EEOC cannot make a *prima facie* case of disability discrimination. Doc. #12-1, PAGEID #98 (citing *Dew v. Edmunds*, No. 1:15-cv-149-CWD, 2015 WL 5886184, at * 7-9 (D. Idaho Oct. 8, 2015)).

It is undisputed that Anthony applied for the Site Manager position, even after reading the job description, as she believed herself to be qualified. Doc. #16-2, ¶¶ 4, 7, PAGEID #132-33; Doc. #18, PAGEID # 187. Anthony's decision to apply, despite being aware of the hearing requirement, renders implausible the EEOC's argument that even starting the application process was futile, an argument for which the EEOC offers no proper Rule 56 evidence in support.[1] Thus, Defendant's posting of the job application with the hearing requirement included is not an adverse employment action.

With respect to January 28, 2014, GunderKline's email, it is well-established, in employment discrimination claims brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, that:

---

[1] In her affidavit, Anthony states that "[t]he Graceworks advertisement for the St. Mark Site Manager is a clear refusal to hire me and all other deaf individuals." Doc. #16-2, ¶ 8, PAGEID #133. However, that statement is a conclusory opinion, to which she would be unable to testify, and is bereft of any personal knowledge or evidentiary support. Accordingly, the Court does not consider it.

> A consistently enforced discriminatory policy can surely deter job applications from those who are aware of it and are unwilling to subject themselves to the humiliation of explicit and certain rejection. When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture[,] he is as much a victim of discrimination as is he who goes through the motions of submitting an application.

*Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365-66, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

In this case, GunderKline informed Anthony that, due to her disability, she "really wouldn't qualify for the [Site Manager] position." Doc. #16-4, PAGEID #136.  Defendant notes that Anthony, in her intake questionnaire, wrote that GunderKline's email "stated I probably won't qualify because I'm not hearing [*sic*]."  Doc. #11-1, PAGEID #80; Doc. #12-1, PAGEID #97 (citing Doc. 11-1, PAGEID #68).  Defendant argues that Anthony interpreted GunderKline's email to mean that she "probably"—but not certainly—would not be hired.   Doc. #12-1, PAGEID #98; Doc. #18, PAGEID #189.   Thus, Defendant claims, Anthony did not conclude from GunderKline's email that the application process would be futile, and consequently, Anthony did not suffer an adverse employment action by receiving the email.  Moreover, Defendant argues, the differing nature of the discrimination claims in *Teamsters* (race-based, which are always improper under Title VII) versus the claim in this case (disability-based, which is not always improper under the ADA), means that *Teamsters* is inapplicable.  *Id*.  Also, Defendant claims, there was no evidence that "the employer's practice of gross and pervasive" discrimination was "the reason why [Anthony] failed to apply."  Defendant argues that the absence of such evidence makes *Teamsters* inapplicable.  *Id*. (citing *Payne v. Bobbie Brooks, Inc.*, 505 F. Supp. 707, 716 (N.D. Ohio 1980) (internal quotation marks omitted)).  For those

7

reasons, Defendant claims, the EEOC cannot make a *prima facie* claim of disability discrimination.  Doc. #12-1, PAGEID #98 (citing *Dew*, 2015 WL 5886184, at * 7-9).

For several reasons, Defendant's arguments are unavailing.  First, Defendant cites no caselaw in support of its argument that *Teamsters* is inapplicable to ADA claims.  While the parties do not cite, and this Court is unaware of, any case in the Sixth Circuit that has analyzed *Teamsters* and its futility exception in the ADA context, the courts in *Dew* and *Equal Emp't Opportunity Comm'n v. Creative Networks, L.L.C.*, 912 F. Supp. 2d 828 (D. Ariz. 2012), recently did so. In *Creative Networks*, a prospective employer refused to provide sufficient funds for a hard-of-hearing applicant to hire an interpreter.  Without an interpreter, the applicant could not complete training, which Creative Networks required him to do before Creative Networks would make a decision as to whether to hire him.  Because the applicant could not afford to hire an interpreter, he abandoned the application process, and the EEOC brought an ADA claim on his behalf.  *Creative Networks*, 912 F. Supp. 2d at 838-40.  Creative Networks argued that, because the prospective employee abandoned the application process, he "was never in the position to be considered for or hired for the job," and thus, could not have suffered an adverse employment action.  *Id*. at 839.  The court "decline[d] to adopt Creative Networks' stringent standard.  As a general matter, a claimant is not necessarily required to complete every step of the application process—or even apply— when discriminatory hiring procedures deter her from doing so." *Id*. (citing *Teamsters*, 431 U.S. 324 at 365-67).

Second, *Dew* is readily distinguishable from the facts in this case.  In *Dew*, it was undisputed that "after receiving positive feedback from select Commissioners but before

receiving a final response from the Commission, whom he was told needed to meet again, [Plaintiff] voluntarily withdrew his application." 2015 WL 5886184, at *7.  The *Dew* court rejected the plaintiff's futility argument because he had failed to "identif[y] a discriminatory policy <u>or</u> other pervasive atmosphere of discrimination such that participation in the hiring process . . . would have been futile for him.  Rather, the facts portray a hiring process and atmosphere devoid of discrimination." *Id.* (emphasis added).  Here, Anthony and the EEOC identified an allegedly discriminatory policy: GunderKline informing Anthony that she was *per se* unqualified due to her inability to hear and speak.  In the email, GunderKline did not indicate that the interview that had been tentatively scheduled for February 7, 2014, would go ahead as planned.  Nor did the email indicate that there were circumstances under which Anthony could still be considered a viable candidate.  That GunderKline did not expressly cancel the interview is immaterial, because a trier of fact could reasonably conclude that his email closed off Anthony from further consideration.  Anthony's conclusion that it would be futile to continue the application process was, therefore, reasonable.

<u>Finally</u>, Defendant's reliance on *Payne*'s holding that the *Teamsters* futility exception was "<u>limited</u> . . . to 'victims of gross and pervasive discrimination,'" 505 F. Supp. 707, 716 (N.D. Ohio 1980) (emphasis in original) (quoting *Teamsters*, 431 U.S. at 367), is misplaced.  The Sixth Circuit has interpreted *Teamsters* to require a "deterred applicant" to show "overwhelming evidence of pervasive discrimination in all aspects of the employer's hiring practices, and that any application would have been futile and perhaps foolhardy." *Tartt v. Wilson Cty., Tenn.*, 982 F. Supp. 2d 810, 821 (M.D. Tenn. 2013) (quoting *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 576 (6th Cir. 2004));

*see also Kreuzer v. Brown*, 128 F.3d 359, 364 n.2 (6th Cir. 1997) (quoting *Harless v. Duck*, 619 F.2d 611, 617-18 (6th Cir. 1980)) (requiring same standard).  However, the parties do not cite, and the Court is unaware of, any case requiring a claimant such as Anthony—who, after applying, was directly informed that, <u>due</u> <u>to</u> <u>her</u> <u>disability</u>, she would not qualify for the position—to show pervasive discrimination in all aspects of Defendant's hiring practices.  Also, *Payne* is factually distinguishable.  Unlike Anthony, the *Payne* plaintiffs did not cite a discriminatory act by the employer as the reason for not applying.  Rather, one plaintiff testified that she did not follow through on her application because "unemployment compensation was better" than the prospective opening, while the other plaintiff testified that she did not complete an application because she had informally expressed interest in the position to the company, and believed "that the company had a duty to call her back." *Payne*, 505 F. Supp. at 716.

In sum, after receiving GunderKline's email, Anthony reasonably concluded that, due to Defendant's allegedly discriminatory job requirement, she would never be hired as Site Manager, and further efforts to obtain the position would be futile.  Thus, under *Teamsters*, Anthony was not required to complete the application process, only to be denied the position at the end of the process.  Anthony's statement that she "probably wouldn't qualify because I'm not hearing," Doc. #11-1, PAGEID #80, is not, as Defendant claims, dispositive as to whether completing the interview process was futile. Doc. #12-1, PAGEID #98.  At most, the statement creates a dispute of material fact, which this Court must construe in the EEOC's favor at this stage.  *Anderson*, 477 U.S. at 255.  The Court is mindful that a plaintiff's *prima facie* burden in an employment discrimination claim is modest, *see Gaglioti v. Levin Grp., Inc.*, No. 11-3744, 508 F.

10

App'x 476, 480-81 (6th Cir. 2012) (claim brought under Age Discrimination in Employment Act of 1967); *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 365 (3d Cir. 2008) (Title VII), a burden which has been met in this case. Accordingly, the Court concludes that GunderKline's email constituted an adverse employment action, and that the EEOC has thus made a *prima facie* claim of disability discrimination. As Defendant advances no other grounds on which the Court should grant summary judgment, the motion is overruled in its entirety.

## IV. CONCLUSION

For the foregoing reasons, Defendant Graceworks Lutheran Services's motion for summary judgment (Doc. #12) is OVERRULED. The EEOC's ADA claim against Defendant shall proceed to trial on December 5, 2016. The stay of proceedings granted March 24, 2016, Doc. #19, is VACATED.

Date: June 15, 2016

WALTER H. RICE
UNITED STATES DISTRICT JUDGE